UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

  vs.

ERICH ZEEB,

    Defendant.

_____/

No. 2:24-cr-14

Hon. JANE M. BECKERING
U.S. District Judge

## GOVERNMENT'S SENTENCING MEMO

In 2012, Defendant Erich Zeeb had sexual intercourse with a 15-year-old girl on multiple occasions. He filmed those encounters, and he produced additional explicit videos and images of the victim. For this conduct, Defendant was charged with three counts of sexual exploitation of a minor under 18 U.S.C. § 2251. He pleaded guilty to Count 1, and the Court will sentence him on April 1, 2026.

Defendant's advisory guideline sentence is 360 months' imprisonment. He has three objections to the guideline scoring, challenging the enhancements for distribution; exploiting a minor in his care, custody, or control; and the pattern enhancement under U.S.S.G. § 4B1.5(b)(1). If the Court were to sustain all his objections, his guideline range would drop to 262 to 327 months. But none of Defendant's objections have merit. There is clear evidence that he distributed materials involving the victim, and his own statements show the way he earned her

parents' trust.  His admissions also conclusively establish a pattern of prohibited sexual conduct.

The facts in this case warrant a guidelines sentence.  As evidenced by the presentence report, Defendant has preyed on girls and young women for much of his adult life, including as recently as the week before his arrest.   And rather than take ownership of his actions, Defendant has consistently sought to shift blame to the victims of his crimes or others.   Given his pattern, it is unlikely that Defendant can be deterred, but a guidelines sentence would deter others and promote respect for the law.   It would also reflect the seriousness of the offense and provide just punishment. Most importantly, the only sentence that would adequately protect the public from further crimes of Defendant is a sentence of 360 months' imprisonment.[1]

## I.    Background

On multiple occasions in July 2012, Defendant used Minor 1 to produce child pornography.    Specifically, Defendant engaged in sexual acts with Minor 1, including masturbation and genital-genital and oral-genital sexual intercourse, which Defendant filmed using a digital camera and Minor 1's cell phone.   (*See* R.119: FPSR, PageID.618–19 ¶ 17; PageID.622–23 ¶¶ 30.)   Defendant also produced photos and videos involving the lascivious exhibition of Minor 1's genitals and anus.   (*Id.*) These events occurred while Defendant was visiting Marquette, Michigan under the

---

[1] The government has not yet received a restitution request or victim impact statement from Minor 1 but will supplement the record if is does so.

guise of providing athletic training to Minor 1.  (*Id.* at PageID.620–21 ¶¶ 21–24; PageID.623 ¶ 13.)   Minor 1 was 15; Defendant was 37.   (*See id.* at PageID.614.)

This case was referred to the U.S. Attorney's office at the end of 2023.   Since opening the case, the government has learned that Defendant has engaged in sexual exploitation or abuse of at least seven additional girls and young women.   (*See id.* at PageID.628–633 ¶¶ 65–100.)   The most recent conduct occurred just one week before Defendant was arrested on his instant charges.   (*Id.* at PageID.630 ¶¶ 76–80.)   The government learned of that conduct from a detective in Florida who reached out after seeing Defendant had been federally charged.   Other cases came to light after victims reached out to the government directly.   (*See id.* at PageID.632 ¶¶ 90–93; PageID.633, ¶ 99.)

## II.    The Presentence Report

After Defendant pleaded guilty to Count 1, a probation and pretrial services officer prepared a presentence report (PSR) which calculates Defendant's total offense level as 43 based on the following factors:

| | | |
|---|---|---|
| Base offense level | 32 | § 2G2.1(a) |
| Minor 12 to 16 | +2 | § 2G2.1(b)(1)(B) |
| Sexual act | +2 | § 2G2.1(b)(2)(A) |
| Distribution | +2 | § 2G2.1(b)(3) |
| Sadistic or masochistic conduct | +4 | § 2G2.1(b)(4) |
| Custody, care, or supervisory control | +2 | § 2G2.1(b)(5) |
| Computer | +2 | § 2G2.1(b)(6)(B) |
| **Adjusted Offense Level** | **46** | |
| Pattern Enhancement | +5 | § 4B1.5(b)(1) |
| Acceptance of Responsibility | - 3 | § 3E1.1 |
| **Total Offense Level** | **48 (capped at 43)** | |

(*See id.* at PageID.626–28 ¶¶ 49–63.)   Defendant has a criminal history category of I and an advisory guideline range of 360 months to life imprisonment.   (*Id.* at PageID.639 ¶ 146.)   His guideline range is capped at 360 months' by the statutory maximum.   (*Id.*)   The probation officer recommends a sentence at that maximum. (*Id.* at PageID.650.)

### III.    Defendant's Objections

Defendant filed lengthy objections to the PSR.   (*See* R.113: Def. Obj., PageID.563.)   Much of his filing disputes trivial details or attempts to shift blame to the victims of his conduct.    He does, however, make several arguments regarding the guideline scoring.    Some of those arguments can be characterized as legal objections, while others appear to be arguments for a variance.    The government addresses the former here and the latter in the following section.

### A. Distribution

Defendant's first outstanding objection is to the two-level enhancement that applies if "the defendant knowingly engaged in distribution."    U.S.S.G. § 2G.2.1(b)(3).   Under the plain meaning of the guideline, distribution means "the act or process of distributing, that is, giving out or delivering especially to members of a group."   *United States v. Derringer*, 844 F. App'x 802, 812 (6th Cir. 2021) (Rogers, J., concurring) (cleaned up).    The commentary to U.S.S.G. § 2G2.1 defines distribution to include "any act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer or material involving the sexual exploitation of a minor."   U.S.S.G. § 2G2.1 cmt. n.1.

4

It also specifies that for the purposes of this enhancement, "knowingly engag[ing] in distribution" includes both cases where the defendant committed the distribution himself, as well as cases where he "aided, abetted, counseled, commanded, induced, procured, or willfully caused the distribution."  *Id.* cmt. n.3.

Defendant's conduct qualifies under any of these definitions.[2]   On July 24, 2012, Defendant sent Minor 1 an email containing four images of Minor 1 engaged in sexually explicit conduct.   (R.119: FPSR, PageID.622 ¶ 30.)   This email came from the same account that Defendant used to communicate with Minor 1 and her mother regarding athletic training; many emails from that account contained his USA Pentathlon signature.   (*Id.*)   And the email establishes that Defendant knowingly transferred, or delivered, material involving the sexual exploitation of Minor 1.   That qualifies as a distribution.   *See United States v. Crow*, No. 22-14267, 2023 WL 8469452, at *3 (11th Cir. Dec. 7, 2023).[3]

---

[2] When faced with whether these definitions expand the meaning of distribution beyond the guideline text, a panel of the Sixth Circuit declined to address the issue. *Derringer*, 844 F. App'x at 809.   *But see id.* at 812 (Rogers, J., concurring) (finding commentary consistent with guideline).

[3] Under the commentary definitions, the use of Minor 1 to produce sexually explicit conduct using her cell phone, which she then emailed to Defendant, (R.119: FPSR, PageID.622–63 ¶¶ 30–31), also qualifies, *see United States v. Lowe*, 163 F.4th 947 (5th Cir. 2026).   And J.K. reported Defendant sent him a sampling of child pornography involving Minor 1.   (R.119: FPSR, PageID.627 ¶ 52.)   The fact that Defendant had contact with J.K. regarding Minor 1 is corroborated by Defendant's own statements regarding emails they exchanged.   (*See* R.113: Def. Obj., PageID.583–84.)

As discussed in the government's response to Defendant's motion to Adjourn Sentencing, a video involving Minor 1 and Defendant was found on J.K.'s phone. Based on further investigation, the government does not believe this video was transmitted to J.K. by Defendant and is not relying on it for this enhancement.

### B. Custody, care, or supervisory control

Defendant's next objection is to the two-level enhancement that applies if the minor was "in the custody, care, or supervisory control of the defendant."   U.S.S.G. § 2G2.1(b)(5).    The PSR scored this enhancement because Defendant "was introduced to [Minor 1's] parents as an Olympic athlete in training," gained her parents' trust, and then was given unsupervised visits with Minor 1.   (R.119: FPSR, PageID.627 ¶ 54.)

Defendant points to minor inconsistencies regarding specific dates and Minor 1's statements regarding the nature of their relationship to argue this characterization of his actions is uncorroborated.   (*See* R.113: Def. Obj., PageID.584–85.)

Not so.   Emails between Defendant, Minor 1, and her parents establish that Defendant presented himself as an Olympian in training and someone who could assist in Minor 1's own athletic development.   In April 2012, Defendant sent an email to Minor 1 and her mother in which he proposed that he meet Minor 1 at the gym for some training, take her to lunch, and then drive her home to show her additional training exercises.   (*See* Exhibit 1.)   He also referenced her parents ensuring she kept up with her training when he was "not around."   The email was signed with his USA Pentathlon signature:

6



That same month, Defendant emailed Minor 1 his regrets for missing her soccer game, asking her how it went, and encouraging her to stretch (*See* Exhibit 2):

On Apr 20, 2012, at 8:28 PM, Erich Zeeb <████@gmail.com> wrote:

Minor 1's Name

Just wanted to write and see how your game went this evening. Im sorry that I couldn't make it up today, the weather was so bad, but please let me know how it went. Hopefully your asthma didn't give you any issues and you rocked it. Best advice I can give is listen to your Dad, stay focused, unplug from the internet every once in awhile, stretch, and most importantly have fun. You have tons of talent just need to put in the work.

Id like to get together sometime... I believe I owe you a steak, though I don't know how much longer I will be in Michigan. Sat. are the best days as I don't have any training those days. So maybe tomorrow if you're free we can hang out, grab a steak, whatever. Just let me know. Promise not to shove ice cream in your face. Hahahaha

Stay out of trouble Spark Plug!

e

And in May 2012, Minor 1's father sent an email to Defendant and Minor 1 containing a photo of Defendant in a USA pentathlon uniform (*See* Exhibit 3):

8



Defendant's own objection letter lends further support for this enhancement. (*See generally* R.113: Def. Obj., PageID.571–72.)   Defendant admits that he first had intercourse with Minor 1 at the gym.   He admits that after this sexual encounter, he was with Minor 1 and her parents at their home, where he spent the night.   He admits that he offered to help Minor 1 achieve her goal of making the Olympics, that he returned to meet with Minor 1 on multiple occasions in West Michigan, that he attended one of her soccer practices with her parents, where he kicked a ball around with her, that he helped her stretch a cramp while her parents watched, and that he gave Minor 1 a driving lesson.   He also admits that he traveled to Marquette to visit

Minor 1 and her family and that he stayed at her parents' condo, describing an interaction that occurred in the car between the two of them and apparently no one else.

Despite all of this—and his admissions that he had intercourse with Minor 1 on multiple occasions—Defendant asserts that he and Minor 1 were never unsupervised in private.  (*Id.* at PageID.584–85.)  That assertion is belied by the evidence and is, frankly, incredible.  The record shows that Defendant presented himself to Minor 1 and her parents as an Olympic athlete who could help Minor 1 in her own athletic pursuits.  As a result, Defendant gained Minor 1's parents' trust, was allowed to stay in multiple family homes, and evidentially had enough unsupervised time with Minor 1 to engage in intercourse and produce sexually explicit conduct.[4]   The enhancement for care, custody, and control is properly scored.

### C.  Repeat and Dangerous Sex Offender Against Minors

Defendant's final objection is to the five-level pattern enhancement under U.S.S.G. § 4B1.5(b).  As the probation officer explains, Defendant does not deny that he engaged in sexual conduct with Minor 1 and produced visual depictions of that conduct on multiple occasions.  (R.119: FPSR, PageID.648; *see also* R.113: Def. Obj., PageID.572 (describing "3-4 sexual encounters" in both west Michigan and Marquette); PageID.580 ("I had sex with a 15 year old minor"; "I admit I participated

---

[4] Whether or not Minor 1 thought of Defendant as a romantic partner in addition to her trainer is immaterial, as is whether Defendant gained the trust of Minor 1's parents over a year or a matter of three months.

in producing visual dipictions [sic] of a 15 year old minor engaged in sexual conduct.").)   Instead, and as he has throughout this case, Defendant argues he "started and continued the charged conduct under [] threats, extortion, and blackmail" from Minor 1, and that "if not for these threats [his] conduct would have ended" the instant he learned Minor 1's true age.   (R.113: Def. Obj., PageID.586.)

This assertion, too, defies belief.   In the email above dated April 20, 2012, Defendant reaches out to Minor 1 to discuss her soccer game.   He then proposes getting together to "hang out" and "grab a steak."   On July 11, 2012, the day after Defendant claims he left Marquette and "headed straight home to Colorado," (*id.* at PageID.573), Defendant emailed Minor 1 two YouTube videos just before midnight. Defendant describes these as "funny" videos, but both appear to have sexual undertones (*See* Exhibits 4 & 5):[5]

From: ████@gmail.com
Subject: Epic Shake Weight Prank
Date: July 11, 2012 at 11:53:00 PM
To: Minor 1's Email

Check out this video on YouTube:

http://www.youtube.com/watch?v=57IoQcuKPxc&feature=youtube_gdata_player

Sent from my iPhone

---

[5] *See* https://en.wikipedia.org/wiki/Shake_Weight ("Shake Weight has gained popular attention and parody because its use involves the appearance of pumping a phallic object") (last accessed Mar. 13, 2026).

From: ■@gmail.com

Subject: Strip to this please

Date: July 11, 2012 at 11:56:42 PM

To: Minor 1's Email

Check out this video on YouTube:

http://www.youtube.com/watch?v=4FcOLFQ5R08&feature=youtube_gdata_player

Erich Zeeb
USA Pentathlon

Defendant continued to email Minor 1 after returning to Colorado. At 12:22 AM on August 9, 2012, Defendant emailed ":( I miss you." Around the same time on August 12, 2012, he messaged, "Oh ;) u ok? U seem down?" and "Night babe. Love you." Defendant again reached out by email in 2014, sending "Hi :(" (in April), and "[Minor 1 first name]?" (in May). And in 2015, he requested to connect with Minor 1 on LinkedIn.[6]

Defendant's pattern of contact is sharply at odds with his attempted self-portrayal as someone who was trying to "end [his] involvement" and only engaged in continued criminal activity "under coercion and duress." (R.113: Def. Obj., PageID.579.) Also at odds with that portrayal is Defendant's pattern of traveling to Minor 1's location in order to have sex with her. Defendant admits traveling multiple hours to visit Minor 1 in West Michigan "4-5 times," and then to traveling

---

[6] The government has produced these emails to Defendant and can make them available to the Court at sentencing if desired.

12

all the way to Marquette for a "week long visit" in July 2012.   (*Id.* at PageID.572.)
The sexually explicit photos or videos of Minor 1 do not show her engaging in, or
threatening to engage in, self-harm at the moments they were produced.   And if
Defendant was truly worried about Minor 1 harming herself, he could have notified
the police, her parents, or another responsible adult at any time during their
relationship.   Instead, Defendant continued to proactively engage with Minor 1,
traveled across the state to see her, had sexual intercourse with her 6-8 times, and
repeatedly filmed that conduct.

There is thus no merit to Defendant's contention that he is somehow not at
fault for his conduct with Minor 1.   And Defendant doesn't argue that conduct
doesn't amount to a pattern as defined by the guideline, nor could he.   The images
found on the S.D. card are timestamped with different dates in July 2012, and
additional images were found in Minor 1's email account.   *See United States v. Sibley*
681 F. App'x 457, 461 (6th Cir. 2017 (affirming application of the enhancement where
the defendant "took sexually explicit photographs of [a particular minor] on three
different days.")   Moreover, Defendant, who was then 37, freely admits that he had
intercourse with a girl he knew was 15 years old on several occasions.   (R.113: Def.
Obj., PageID.573 ("Mr. Zeeb concedes that [Minor 1] was 15 years old and a minor . . .
and that other than their first encounter he was aware of that fact.").)    That
qualifies as "prohibited sexual conduct," because had it occurred within the special
maritime and territorial jurisdiction of the United States, it would have violated of

18 U.S.C. § 2242(a), sexual abuse of a minor.   *See* § 4B1.5(b)(1), cmt. n.4; 18 U.S.C. § 2426(b)(B).

Finally, Defendant's actions were not isolated to Minor 1.   The PSR contains allegations of sexual abuse or exploitation involving seven additional girls and young women.   (*See* R.119: FPSR, PageID.628–633, ¶¶ 64–100). Three of those victims came to the government's attention after Defendant was charged, when investigators or victims saw the government's press release and called its office.   None of the additional victims were known to government counsel or the case agent prior to opening of this case.

The Court may rely on these additional victim statements at sentencing as long as they satisfy a "minimal indicum of reliability," a "relatively low hurdle." *United States v. Armstrong*, 920 F.3d 395, 398 (6th Cir. 2019).   Given the passage of time since the events involving other victims, it has been difficult for the government to corroborate their accounts with external evidence. But their separate accounts corroborate each other.   They reflect consistent use of online dating websites, including those focused on "sugar daddy" type relationships, to make contact. (R.119: FPSR, PageID.629–33 ¶¶ 70, 80, 82, 90, 96, 99.)   They show Defendant providing similar biographical information, including information about his Olympic career and cancer.   (*Id.* at ¶¶ 70, 77, 99.)   And while multiple types of exploitation and abuse are covered, there appear to be patterns of non-consensual sex, recordings of sexual conduct, arranging meetings with other men, and soliciting child pornography.   The internal consistency of the other victims' statements enhances

14

their individual credibility.   *Cf. United States v. Santana*, 723 F. App'x 331, 338 (6th Cir. 2018) (discussing corroboration of cooperating witnesses).

Moreover, the government has significant external evidence for the most recent victim, whose exploitation is detailed in paragraphs 76–79 of the presentence report.   The local investigation showed Defendant booked a hotel near this victim's residence in 2024, and his license plate was captured that same day on a reader just two hours north of her home.   (R.119: FPSR, PageID.630 ¶ 79.)   All Defendant can say in response is that he was "catfished" and entrapped by this 16-year-old.   He doesn't deny he was in communication with her; he doesn't deny asking for risque photos and offering to get a hotel room.   Text messages recovered from the victim's phone show she informed Defendant of her true age and he responded, "I mean I kinda figured you weren't 19," "[b]ut I'm ok if you are."   (*See* Exhibit 6, *34–35.)[7] Considering the victim in 2024 was a 16-year-old that fit the mold of Defendant's other victims, the evidence shows that he was neither catfished (this was an actual minor) nor entrapped (he was predisposed).

The full picture of exploitation discussed by Minor 1 and the other victims shows Defendant is exactly the sort of offender the pattern enhancement is meant to address.

---

[7] The government has provided a portion of the text messages between Defendant and this victim to contextualize this statement while protecting the victim's identity as much as possible.   If the Court would like to see the full exchange, the government can make it available at sentencing.

### IV.    Section 3553 Analysis

The remaining points in Defendant's objections filing are more properly characterized as policy arguments for a variance than objections.   He takes issue with the two-level enhancement that applies because Minor 1 was over 12 but under 16 years old, arguing it "overstat[es] [his] culpability," "applies in nearly every production case," and "is not fully the product of empirical study by the sentencing commission."   (R.113: Def. Obj., PageID.582–83.)   Defendant likewise argues the enhancement for use of a computer "does not warrant extra punishment."   (*Id.* at PageID.585.)

Both of these enhancements are correctly scored.   First, the Sixth Circuit has rejected attempts to disregard child-pornography enhancements on the grounds that they are not empirically driven and don't meaningfully differentiate between offenders.   As the Court of Appeals explained in *United States v. Lynde*, the fact that Congress has "actively policed" the child-pornography guidelines "is a virtue, rather than a vice."   926 F.3d 275, 280 (6th Cir. 2019) (cleaned up).   And if "the harm an enhancement addresses is real, . . . the enhancement is valid, no matter how often it applies."   *Id.* (cleaned up).

Second, the age and computer enhancements apply on the facts of this case. Defendant doesn't contest that Minor 1 was 15 when he used her to produce child pornography.   (R.113: Def. Obj., PageID.583).   He also doesn't contest that he communicated with Minor 1 by email, using the internet, or that Minor 1 used an iPhone to send many of the involved emails.   *See United States v. Foard*, 108 F.4th

16

729, 736 (8th Cir. 2024) ("Using a smart phone constitutes use of a computer.")   And Defendant admits that he met Minor 1 on a "dating app," which also qualifies as an "interactive computer service."   *Cf. Doe v. Grindr Inc.*, 128 F.4th 1148, 1151 (9th Cir.), cert. denied, 146 S. Ct. 319, 223 L. Ed. 2d 134 (2025) (There is no dispute that Grindr is an interactive computer service provider.").   Defendant and Minor 1 did not live in the same location during the offense conduct, so their communications were necessarily electronic.   And those communications show Defendant cultivating a relationship with Minor 1 and her parents before using Minor 1 to produce child pornography.   Based on the totality of the circumstances, including Defendant's pattern of similar conduct with other victims, the offense conduct here involved the use of a computer or interactive computing service to persuade, induce, or entice Minor 1 to engage in sexually explicit conduct.

Third, although Sixth Circuit precedent permits the Court to vary downward based on policy disagreements with the guidelines, *see Lynde*, 926 F.3d 275 at 280, a variance isn't warranted here based on either the age of the victim or computer enhancements.   The § 2G2.1(b) enhancement applies even if a defendant isn't aware of a minor's age, *United States v. Rudra*, No. 25-3040, 2026 WL 75323, at *5 (6th Cir. Jan. 9, 2026).   But here, Defendant admits that he knew Minor 1 was 15 when he had sex with her multiple times and filmed those encounters.   And as discussed, Defendant's assertion that he was forced by a 15-year-old to engage in ongoing criminal activity is unpersuasive, particularly considering he retained the SD card depicting Minor 1 for years following the offense and after accounting for his

17

statements to the victim described in paragraphs 76–79 of the presentence report. (*See* Exhibit 6.)   Defendant's actions with that victim likewise show why the computer enhancement properly reflects his culpability.   (*Id.*; R.119: FPSR, PageID.630 ¶ 79.)   He has a pattern of using online dating services to find and exploit minor victims.

And even if the Court were to find that one or both of these enhancements overstated Defendant's culpability, that wouldn't be a basis to vary downward. Defendant's offense level after accounting for acceptance of responsibility is 48, but it is capped at 43 under U.S.S.G. § 5A cmt. n.2.   Taking away both enhancements would therefore still result in the same total offense level and advisory guideline sentence of 360 months' imprisonment.

In this case, that 360-month guideline sentence is the only term sufficient to meet the purposes of sentencing.   That guideline range is supported by Defendant's conduct with Minor 1 alone.   But the presentence report shows that his conduct with Minor 1 is just the tip of the iceberg.   Since at least 2012, Defendant has preyed on young women and girls.   He has exploited and abused them himself, and he has arranged for others to do so.   And even as he sits on the eve of sentencing, he is

attempting to minimize his own actions and shift responsibility to his victims,[8] many of whom were children when they had the misfortune to cross his path.

Defendant asks the Court for lenience based on pre-indictment delay and what he refers to as "obstruction of justice" by the mother of his child and Minor 1. (*See* R.113: Def. Obj., PageID.586–89.) Neither argument warrants a downward variance. Defendant asserts that he would have been able to prove his lack of culpability but for the delay and the actions of others. But the Court need only look at his pattern of conduct since 2012 to see the fault in that logic. Rather than use the intervening decade to make amends for a one-time mistake, Defendant has continued to engage in the same predatory conduct.

Considering Defendant's history and characteristics, the offense conduct, and the factors in 18 U.S.C. § 3553(a), Defendant appears beyond specific deterrence and the need to protect the public from further crimes is paramount. A guideline sentence is necessary to achieve that purpose, as well as to promote respect for the law and provide adequate deterrence to others. It is also necessary to reflect the serious nature of Defendant's conduct and provide just punishment.

---

[8] The government currently believes Defendant meets the bare criteria for a reduction for acceptance of responsibility, but its position could change based on positions he takes at his sentencing hearing.

## V.    Conclusion

The government respectfully requests that the Court overrule Defendant's objections and impose a guideline sentence of 360 months' imprisonment.


Respectfully submitted,

TIMOTHY VERHEY
United States Attorney

*/s/ Hanna L. Rutkowski*

Dated: March 18, 2026          HANNA L. RUTKOWSKI
Assistant United States Attorney
1930 U.S. 41 West, 2nd Floor
Marquette, MI 49855
(906)226-2500
hanna.rutkowski@usdoj.gov